Ms. Milligan Goldsmith. I'm sorry, Ms. Grinstead Goldsmith. But do you do you use the last two names or just Goldsmith? Ms. Goldsmith. Your time's up. May it please the court, my name is Milligan Goldsmith and I have the privilege of representing Charles Ritchie, the appellant. The district court below erred in denying Mr. Ritchie's 2254 habeas petition. His jury conviction was based on two incriminating statements he made that were taken and admitted in violation of his constitutional rights. The trial counsel was constitutionally deficient in failing to have these statements suppressed. The basis for both suppression motions was in the discovery file available to counsel. Trial counsel is without excuse for this oversight and this was prejudicial. Without the incriminating statements, there is at least a reasonable probability that the jury would have doubted Mr. Ritchie committed the crime. Why do you think so? The facts here, he's robbing a convenience store in broad daylight. And although he has a mask on inside the store, he takes the mask off when he leaves the store and he's looking full on at a customer who's looking directly at him. He's promptly identified. The clerk identifies him on the basis of his clothing. He had on his person the money including the $2 bills that had been in the store's till. Money tubes consistent with the tubes used at the store and discarded items of clothing along his escape route. Where would, help me with reasonable doubt. This seems to me like more evidence than we usually see. So the standard is reasonable, there's a reasonable probability which is lower than sufficiency of the evidence. The case ends with two police officers that get on the stand and say Mr. Ritchie told us that he smoked crack and he confessions out, the evidence is at least equivocal. There is some doubt. The money tubes were never entered into evidence. There's a passing remark made by an officer that he found tubes on the person, but the jury never had the tubes presented to them. The store clerk saw the robbery. The robber was only in a mask. By the time she saw him at the show up, he was no longer wearing the mask. She identified him as wearing a different shirt that he had on during the robbery and no longer wearing the baseball cap. During the robbery, didn't the customer clearly see him and didn't he go around the store and come back and stand in front of the customer? All right, I'm sorry, talk to me about it. So the customer did encounter the robber as he was fleeing the store and put a bag in front of his face and then the robber did go around and the customer saw him and called 911. But the customer's testimony changed on the stand. So the customer said, when I saw him fleeing, he was wearing one color shirt and he repeated that. And then the state, the prosecutors put a statement in front of him and said, you know, Mr. Durham, it looks like your earlier statement. Please read from it. And then finally says, oh, I guess it was the other color shirt. And then the customer said at the show up, Mr. he was wearing one color shirt. And then the store clerk said it was other color shirt. And this sounds confusing because it is, and it would have been confusing for the jury as it unfolded at the time of the trial. The police never presented evidence on the mask or the mask was, or on where the cartons of cigarettes were. And he had, but he had Newport cigarettes. He had two packs of Newport cigarettes on him. The same type of cigarettes that were out. That's correct. But the standard is just a reasonable probability, reasonable doubt. His lawyer missed two clear suppression claims that would have kept out two confessions. And the state ended their case putting those officers on end of their closing arguments with test, emphasizing the confessions. And that's just critical. The first one was in violation of his fifth amendment rights. He was brought down to the station. He was questioned. He was Mirandized. And in response to the Miranda warnings, he said, I do not want to sign the waiver form. And I do not have anything to say. That is an unambiguous and unequivocal invocation of the right to remain silent. Then the same officer who is, you issued the warnings continued to interrogate him. Where do you see continued to interrogate him? Mr. Ritchie testimony. In his testimony, he said that the officer after the officer LeBrand left the room, the officer who issued the warnings, officer Blackburn said, started to ask him questions about Mr. Ritchie's prior statements on drug use that he told the officer before the Miranda warnings were given. And could he talk a little bit more about that? And is that why you which is an oblique form of interrogation under Rhode Island versus Ennis. And in response, Mr. Ritchie said, yep, I was smoking crack. The woman I was with needed money. Told her it wouldn't work. The gun wasn't loaded. And then the officer testified to that in the stand. And that should have been suppressed. The reason why it should have been suppressed is there was evidence of that in the discovery file. The other officer who was present when the Miranda warnings were When you say it should have been suppressed, are you saying that the court would have suppressed it? Yes. What about the officer's testimony that he asked him no questions? Didn't the officer testify that he asked him no questions? That's correct. The officer at the pretrial and trial testified that he gave the Miranda warnings that Mr. Ritchie seemed to understand them. And then he just uttered the incriminating statements. But that's the same officer who wasn't cross-examined on the report that the officer wrote that had the invocation documented in it. That's the whole point of the claim. If trial counsel had cross-examined that officer and put in a report that the other officer present said the subject said he didn't have anything to say, that would have eviscerated the reliability of Officer Blackburn's testimony. His testimony is not reliable. That's the basis of our claim. Okay. We have these two confessions coming in different procedural, in different procedural postures. So do you want to talk to me about the post-arrest statement where you have a state court finding no prejudice. How is that an unreasonable application of the law to the facts? The finding of no prejudice under Strickland by the state court was unreasonable on both prongs. No deficiency, no prejudice. Did it find on deficiency? It did. I thought it only found, I mean, I only recall the discussion being asked to prejudice, but okay, why was it unreasonable? It was unreasonable because counsel, it was unreasonable because it was a clear violation of his rights that counsel could have raised and the state court refused. But you're saying you disagreed with, you're just saying you disagree with it. Why is it unreasonable? It's unreasonable because the state court refused to acknowledge the supplemental report by the officer who'd written the invocation. He said it wasn't admitted into evidence. It was admitted into evidence. It's a joint appendix 450 during the hearing. It was admitted into evidence and the officers testified to what was in the officer Lebrant's report. They said what the report said. So you're saying that the state court made a mistake? It made a mistake and it's not only a mistake, it's unreasonable because any other court that would have seen the same issue would have found that there was no deficiency. You don't know that. But we never know that. That's exactly my point. You can't make assertions that are unknowable. Let's assume for a moment that the state court made a mistake. You still have, it still has to be an unreasonable application of the law. So help me with, assume the mistake and help me understand why the state court's determination was unreasonable. Not just the fact that you think it was wrong, which isn't enough. Why was it unreasonable? Because the basis that the state used to explain its reasoning was unreasonable. It said that the trial counsel had tried to have both statements suppressed, but the trial counsel tried to have those statements suppressed on totally different grounds. But Your Honor, if you don't mind, I think this will help. Even if this court denies Mr. Ritchie's claim on claim one, it can still find on claim two. Now are you talking about the post bond? Yes. Okay, and I appreciate the distinction. I really do. I'm just trying to get, I'm trying to deal with unreasonable, the determination of prejudice by the state court was unreasonable because it improperly didn't consider certain evidence. Correct. It didn't consider the report. And what else? And it didn't consider trial counsel's testimony at the state habeas hearing that his handwriting was on the report, that he didn't recall ever raising the report with Mr. Ritchie oppressing the claim. I think these circumstances are very similar to Tice v. Johnson panel decision. Okay, but it goes to your argument that the state court improperly failed to consider the report that you're referencing. That's correct. Okay, so let's go to. Let me say it's different than Tice in the sense that Tice, the facts were not in dispute. There are a lot of trial court here that were in dispute. Correct? In Tice it was very clear that the the statement was made, it's a similar statement that was made here, that the interrogation continued. That was very clear. We don't have that kind of clarity here. We do in the sense that Mr. Ritchie testified to that. He was found not credible. The state court's opinion, no, that is not how we read the state court's opinion. The state court listed the type of testimony that it was assessing in those first two pages and at the end of the testimony said we find Mr. Ritchie to be not credible and trial counsel to be credible. But that was after reading certain lines of testimony. But even if your view is that the state court found he was not credible, there's clear and convincing evidence that rebuts that finding, which is Officer Lebrand's report. Yes. Well, all the report says is that Blackburn advised Ritchie of his Miranda rights. At that time, Ritchie stated he didn't have anything to say. Later, through conversation with Blackburn, he stated, made statements. That doesn't indicate clearly and convincingly to me that the officer initiated the conversation. Right, but it's the state's burden to show that they scrupulously honored Mr. Ritchie's request to remain silent. Well, here you're on a post-conviction motion and I think the burden shifts in terms of finding the state court's decision clearly unreasonable or unreasonable. Don't you agree that it shifts? Well, it's what the state court's, the evidence it relied on. And when the state court makes a finding that his invocation was scrupulously honored, the state court needs to point to some evidence that it was. And the only evidence... At the standard is very high. I think that's what we're all trying to get to. It's not just that the state court made a, arguably made a mistake. Can I try this tack on the first claim? We raised the first claim. We think it's a valid claim, but what we wanted to point out was a trial deficiency because we think that impacts the prejudice analysis on the second claim. So you can find that the state court, you can find the state court reasonably applied Strickland and still find it was incorrect, that there was a trial deficiency error on the first claim and consider that when you look at the second claim, because when you're analyzing prejudice on the second claim, de novo, you're not required, you're not, you should not count evidence that was tainted by counsel error. So you can make a finding of two counsel errors, two incriminating statements come out, and that is not an end run around EPA because you're still finding the state court reasonably applied Strickland on the first claim. It can be an incorrect finding. But you still have to show that there is a substantial claim, right, that post conviction trial counsel was ineffective and that there was prejudice, don't you? Right. And it has to be a substantial claim. And that's the gateway to reach, but you have a procedural, you have a procedural hurdle to go through before we get to the merits of that second claim. Correct. Okay. But the procedural hurdle necessarily ties in the underlying merits of the claim to show it's substantial. We're just trying to show it's meritorious and therefore it obviously was substantial. But correct, I mean, those are the Martinez prongs that allow you to review the same. Correct. It is the same looking at the facts of the case. And in prejudice on the second claim, you take out both incriminating statements because they should not have been in. There was trial error that trial counsel missed. There were two easy suppression claims at that time. And then in considering prejudice. You're talking about the second claim. Right. Only the second claim. Correct. So do you get the benefit of excluding both? Yes. And why would that be? Because the trial counsel made an error in not having the first statement suppressed. So we're assuming, we're giving you, we have to find in your favor as to the post-arrest statement. No, because you can find, I mean, yes, but you don't need to find in our favor for claim one. You can still find the state court reasonably applied strickland, even if its finding was incorrect. And you can say, de novo, we think there was a trial deficiency. And there is clearly a trial deficiency on the second claim. Mr. Ritchie asked for counsel at his bond hearing at the time of his suppression hearing. Michigan versus Jackson was good law. And at that time, defendants who asked for a right to counsel at a judicial hearing, like an arraignment, couldn't subsequently waive it at a police initiated interrogation. Those were presumptively invalid waivers. His counsel did not raise a suppression claim at that time under Jackson. It would have won. On prejudice, the only wrinkle is, so Jackson was overruled by Matteo. Matteo said that those waivers are no longer, my time has run out, let me answer the question. Please respond. All right, Jackson, Go on as long as you're responding. Matteo overruled Jackson, but what it said was that those waivers were no longer presumptively invalid. And then it remanded and allowed that defendant to make a challenge under Sixth Amendment waiver jurisprudence, which is that the police have a deferment of obligation in respect to the request of counsel, and they can't knowingly circumvent that right by trying to deliberately elicit incriminating statements from defendants, knowing that counsel had been requested. And in this case, that Sixth Amendment right was still violated. It just wasn't a Jackson error when he wasn't allowed to, and elicited an incriminating statement after multiple violations of his constitutional rights the day before. And you're saying that, so tell me about the prejudice prong on that one. Okay, so assuming counsel deficiency on the second claim. Now, the question is prejudice. What evidence was tainted by counsel error? On the second, as to the second claim only. Right, and so you take out the post bond hearing statement, and then you're left with a post arrest statement, obviously. And then the question there is de novo, you can find that post arrest statement should not have been in there because there was counsel error. And you can do that granting, I mean, affirming the district court's ruling on claim one, because you can say, look, the state court did not unreasonably apply Strickland, but we don't think they correctly applied Strickland on the deficiency prong. And so when we look at evidence now, prejudice, you're supposed to consider holistically under Strickland, credit the evidence that was tainted by, do not credit the evidence that was tainted by counsel error, and just look at the evidence that was supposed to be in front of the jury. I don't understand how we can do that under T. I'm sorry, I just don't. And maybe you could help me, too. What evidence do you have that Mr. The evidence is the record is that he was pro se below and he said he had voked, right? And then we know he's appointed and there's nothing else in the record or South Carolina procedure that would show that. We're drawing inferences from his assertions make sense under South Carolina procedure. That's right. But the state in their response brief cited a record in public records, they conceded that Mr. Ritchie was advised of his right to counsel. We know there are public records where he was appointed counsel by an order of the general sessions court two days later. And I, I'm, I'm, I will try, I will continue to try to get this straight in my mind. Thank you. Thank you. Miss Brown. Thank you, Your Honor. May it please the court. My name is Melody Brown. I'm with the South Carolina Attorney General's Office. It's my pleasure to be here this morning representing the warden in this section 2254 action. Two issues have been presented. One was preserved for merits review in the district court and one was defaulted. And the question is not whether different back binding could be made or different motions could have been made or different given at this point. The question pertinent to us is did this habeas petitioner carry his burden of proof? We have very deferential standards under 2254. And what Mr. Ritchie had to show, because, and I use the term, I use his name, excuse me, because he was pro se in the district court, Mr. Ritchie had the burden of showing that the PCR ruling and his preserved claim was so lacking in justification, so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement, an extraordinarily high standard. And it's extraordinarily high because this case comes to the district court after a full review by the state court. There's already a state record in place. And the PCR judge looked at that record and made a determination. The district court looked at those records and reviewed the PCR judge's determination. I wanted to turn specifically to this first of the statement silence issue and the document that was offered in the PCR hearing. We're talking about the post arrest statement. Yes, ma'am. If you could, it would be helpful to me if you would, because the procedural postures are different, if you would tie them. Sure, absolutely. I'd like to turn to the one that was preserved that the PCR judge did consider. And specifically, I would like to talk about the report that was offered. And this would be from Officer Libren. And the reason I wanted to underscore this, two things. The PCR judge found in the order that the report was not offered and he did not consider it. Now the transcript shows that the report was discussed. And in my brief, I noticed they did discuss exactly what the document reflected. I will say this. I believe that a Rule 59 motion could have been made. Specifically, when you look at the joint appendix at 481, PCR counsel actually referenced offering documents and thought that she had moved everything in and the judge apparently had some reassurance at that point. But the problem is, it's in the order. And under state law, opposing counsel, PCR counsel, had the obligation to make a Rule 59 and say, wait a minute, I think there was a mistake here. Wait a minute, I want you to reconsider it. So you're saying there is deficiency? You're conceding deficiency? No, ma'am. Okay. I am saying as far as the record and as far as the PCR court giving fair review of the evidence before it, there is a ruling that that Libren report was not accepted and was not considered. And PCR counsel did not request that the PCR judge revisit that ruling. And it went up on appeal like that and therefore that report could not be considered. And that's important because the magistrate judge in reviewing the state court records noticed that that report, that Libren report that Mr. Ritchie is relying on for the preserved issue, was not a part of the record. And the PCR judge found that Mr. Ritchie had failed to present specific and compelling evidence. Even if one looks at the Libren report that wasn't accepted, and I believe that Judge Diaz had mentioned this earlier, the wording of that report just says, through conversation. And we have to keep in mind, this is a police report. This wasn't through interrogation. Through questioning. Conversation indicates a bit of a give and take, a bit of a voluntariness. But in a case like this where you clearly have an invocation of a right to remain silent, and you see through conversation, are you suggesting to me that that should not have been the biggest red herring in the world for that, for his counsel to have moved to suppress it? I think she means red flag. Red, red flag. Red flag. I like red herring. No, no, no, I didn't mean red flag. Thank you. Red flag. Red flag. I certainly do understand where you're going, Your Honor. It certainly goes to the question of deficiency performance. And I'm sorry to add that in, but that's exactly what I'm going to. Well, and here's the problem we have with it. We have twofold, procedural and substantive. If I may speak to the procedural first, district court can't look at it because the state court didn't look at it. The only way to expand the record at this point, and again, I go back to Judge Diaz because I believe you used the clear and convincing language. That's 2254E. That's got to be that you could not have presented your factual basis and it's something that is akin to actual innocence, something that would lead the fact finder to believe that you wouldn't be convicted. Okay, so deal with me on substantive. Okay, substantively, you look at it and first of all, we have the conversation. We don't have interrogation. We don't have questioning. It's not definitive that his right, invoking his right. Doesn't it have to be definitive for the counsel to have been alerted that this is a serious issue? Well, because it's not definitive, Your Honor, what this can do is it can complement the investigation that counsel led. Now, we have to remember that the report that was actually offered in PCR had counsel's underlining on it. That was established. That came out of discovery. He had reviewed it. He had underlined portions of that report. This wasn't missed. It was not developed. And why was it not developed? Your Honor, we get into speculation to some extent, but I can say this. Oh, really? Didn't he say he should have done it? No, no, ma'am. Okay. He said, and this is important, too, and it's a bit of a shade of gray. I will admit that. But it's sort of like conversation. Conversation is not interrogation. Counsel here said an issue could be raised. By contrast, in Tice, in this court's opinion in Tice, the fact showed that defense counsel said, I should have raised it essentially. I should have done that. I would have made the motion. Didn't catch that. That's not what counsel said here. Counsel said it could have been raised. That is a very tepid response to being pointed out. What does this tell us? Well, we do know that he investigated. He had the report. And he spoke to his client at least seven times. He was also very sure that the statement would be very important to the state. It was. It was used at trial. He knew this. And yet he didn't bring that up. He decided to pursue voluntariness linked to drug use. Strickland tells us two things. Oh, right. It's not an either or. Well, Strickland tells us two things that may help inform his decision. Are you saying that we should defer to a tactical decision? Is that where you're going? Exactly. Strategic decisions. OK. And what, in your view, makes this a tactical decision? His conversations with his client and the fact that he didn't say that this is absolutely wrong and the fact that it wasn't contested at trial. Wasn't he asked about whether or not it was a, why didn't he do it? And he says he didn't know. He says he doesn't remember. So you are creating this idea that it was a tactical decision. I am suggesting it was not inconsistent with a tactical decision. Whose burden is it? This would be the applicant's. 71.1 of our civil rules always puts the burden on the applicant. And that's why I am underscoring here, this is not the state's burden. It wasn't the state's burden at post-conviction relief. It's certainly not the state's burden in an EDPA review. Did you read the state court's final determination as turning on deficiency? I thought it was far more clearly definitive with respect to the prejudice problem. I believe that it reached both, Your Honor. And especially there is a sort of combination sum up paragraph on page 500 of the joint appendix and that's where the PCR judge actually said that Mr. Ritchie failed to present specific and compelling evidence and that goes to that let's look at these shades of gray and look at how the different interpretations can be. Failed to present specific and compelling evidence and there was no prejudice. So it's a very strong ruling on each one. So how do you interpret that as a ruling on deficiency? I found that or I read it as he was not deficient because he had investigated the case and he was successful in having the first statement, well recall there are actually three and all three statements are very consistent. Mr. Ritchie taking responsibility at that point because of need of money for drug use. But the first one was. I don't understand why the fact that you make the point that he had presented one issue and not the other two makes it not deficient on that particular issue. Strickland requires reasonable representation and the adversarial process to be preserved. It does not require near perfect advocacy and the United States Supreme Court has just recently underscored that in a Maryland case where they summarily reversed because of an knowledge that something else would have been better and in that case I believe it was a contemporaneous issue. It was information that had been accepted that was later found not to be acceptable. But they underscored it's not perfect representation. You are not entitled to perfect representation but you are entitled to adequate representation and to test that case in adversarial proceedings. And that kind of goes back a little bit to more of the procedural. I know I'm speaking directly to you because I'm still on my procedural explanation. I certainly don't mean to leave anybody else out on this. But because we're in federal habeas now, we're looking back to see when this was developed. When was the factual basis developed? Is that the record that was before the district court, is that sufficient to make a determination? And to do that you need to look back at the state proceedings and you go back all the way to trial. In South Carolina you have two opportunities to have the statement passed on. You have pretrial. You have preponderance of the evidence. The trial judge will determine whether it's admissible. But also in South Carolina that statement goes before the jury and the jury has to make specific fact finding that the state has proven beyond a reasonable doubt that the statement is voluntary before the statement can be considered along with the other trial evidence. Two opportunities there. Mr. Ritchie never did present any testimony. And he could have presented his own testimony and said, wait a minute, the officer was asking me questions. His testimony on the stand is wrong. In fact, it would have been very easy to do that in pretrial because he wouldn't have been subject to cross-examination on everything else. It would have been limited to the voluntariness. He didn't do it there. On appeal, he brings it up, but there's no evidence in the record at that point. PCR brings it up again, both issues. Still, he doesn't develop the record on the second issue, which I will get to. But I wanted to showcase how this is Mr. Ritchie's burden and he has failed to show the significance of the report and the officer. He has failed in his burden. And the district court was absolutely correct in finding the PCR judge's ruling should have been upheld. Mr. Brown, Ms. Goldsmith spent a good bit of time talking about the compelling nature of these confessions and how they were presented at the very end of the state's case as the coup de grace. And her view of the evidence was that the other evidence was that it really wasn't as significant as you would have it. How do you respond to that? I disagree. I'm not so sure. Totally. I disagree. And I say that rather flippantly because the record is so developed. And the things that are brought up, Your Honor, would be things that you could ask a witness on the stand. You could play around with this. You could do a full and fair cross-examination on this. And you'll notice that counsel did. Counsel asked about these differences in recall. But the bottom line is you had two individuals with adequate time to observe the robber, testify to identification. There was an immediate show up after that. That's not impermissible. He still had the clothing that was consistent. I won't say it was absolutely correct, but it was consistent with the robber's clothing. He had money consistent with what was taken. He had the canisters. He had a weapon that was recovered. There was a gray jacket that was recovered. And the compressed time frame and the location so near the robbery itself, we're talking maybe 20 minutes after he ran out, that is very heavy evidence. Did the clerk also see him without his mask? My recollection was that the clerk identified him in part based on his clothing. I believe that's correct. I do not believe she ever saw him in the face. My understanding of the record was the material was taken off as he went outside where the customer saw him. But again, you've got compressed time frame. You've got the compressed area. This is a very quick capture. And you even have Mr. Ritchie who is still panting. He still had effects from exertion of having tried to escape. Very compelling evidence. What does, you may ask, what does the statement do? Well, the statement kind of ties it all together. If you will, we have a judge in our jurisdiction who sometimes would refer to this as perhaps gilding the lily. Did we need it? No. But it certainly shows how everything comes together. You said the statement ties it together? It does. It ties it together. It makes sure that everything that was there even is consistent with what the defendant would say. We don't need it. We tied everything together by presenting all the evidence. But this is consistent with what the defendant himself would even say. So was it necessary? No. But it meshes well as it should. It meshes well. If it's a truthful statement, it will mesh well. And of course, he said it three times. It appears by all accounts to be quite truthful. Now, I do want to make a couple of points without going over each statement, each premise that was offered this morning. Both his statements, the preserved one and the defaulted one, both of them depend on arguments where appellant puts a lot of stock in the fact that, in his perception, police knowingly circumvented his rights, knowingly circumventing his rights. Add a little procedure back again. PCR judge is looking at this, and he's looking at it in context of what happened at trial and what was offered during the PCR as well. And the record does not support that he asserted his rights, he being Mr. Ritchie. Now, there's no contest to the fact that officers... Okay, wait a minute. You said the record does not support what? That Mr. Ritchie asserted either the right to remain silent and did so or asserted his right to counsel and to stop questioning. You go to something that I do find a little strange. I asked opposing counsel about the evidence that Mr. Ritchie invoked his right to counsel on November 2nd, and the answer, as I understood it, was, well, it makes sense under South Carolina. It was an inferential response. It wasn't specific evidence. It was inferences drawn from questions of South Carolina procedure. Can you speak to that? And I'll ask opposing counsel to go back to it. Mr. Ritchie was taken for a bond hearing. On the bond form, there's a checklist, and magistrates will check off if it is a general Sessions case, a felony case like this. They will check off that he is advised of his right to counsel if his indigent counsel can be appointed to him. It's checked off. And I will tell you, I've gotten the clerk's records from the Greenville County Circuit Court, and there is a bond report in there that says the same thing. It is checked off. He was advised. It says nothing about he asserted, but it doesn't really matter because of this, and this is Montillo as well. United States Supreme Court approves this thought, and it is that when you have Miranda and you have the officers telling you, you have the right to counsel here, and you can stop any time. He didn't do that. So the assertion that it makes sense under South Carolina procedure in this form indicate that he was advised, but doesn't say anything about his affirmatively invoking his right to counsel. Is that what you're saying? I'm trying to understand the significance of that. May I respond, Your Honor? Please. It is correct. The only thing, the bond, and there's a bond form that opposing counsel actually added to their brief. That's the basic form. The one in the clerk's office just has one check by advised of right to counsel. That's all it is. And does, it doesn't indicate whether he asked for counsel? Was he appointed counsel? Does it indicate that? No, ma'am. That does not. That bond is very short. It's, did you advise? Yes, I advised. That's it. Now, he was appointed counsel. He was appointed counsel at least, and I realize this is outside the record, but in all candor, I looked at the clerk's office to see if I could find an appointment, a counsel order. But I know at least, maybe at least a week after that, he had counsel because counsel had made an appearance to reduce the bond. But we don't know at what point counsel was appointed. We don't know that it happened at the bond hearing. No, ma'am. I have not been able to determine that from the records. In fact, I thought originally he had counsel that perhaps he had retained because I knew that counsel had changed by the time of trial. It does not appear that way. I have seen a letter that says I have been appointed to represent Mr. Ritchie. But I could not tell you when, where, and how. That could be developed. I'm sure that public defender's office, indigent defense, some agency would have materials, could have been developed had Mr. Ritchie raised it in PCR and done a little discovery at that point. We do not have it now. Thank you. Thank you. Ms. Goldsmith. On that last point on when Mr. Ritchie's counsel was appointed, those records do exist. He was appointed counsel two days later. What matters for the invocation, the invocation is when the Sixth Amendment right attaches. He asked for counsel at that hearing. How do we know that? There's an order from the General Sessions Court that's in the indigent defense in their archived records. I called the agencies. It's outside the record now. We made our argument based on the record that was before you at the lower court. Mr. Ritchie was pro se at the lower court. It just confirmed the inferential argument we've already made. On the second claim, one thing I would like to emphasize is that this is a very unusual case in how the prejudice analyses on the two claims interact. Mr. Ritchie could not succeed on prejudice on the first claim unless the second, the post bond hearing incriminating statement was out as well. His state habeas counsel was ineffective for failing to raise that second claim. And so that not only deprived him of the prejudice from that claim alone, the state court did not have both claims in front of it at the same time. And that was critical in his case because he cannot win on prejudice if both statements, one or the other statement is in. And so the reason we're in this log jam now on the procedural stagger of the case is because state habeas counsel was ineffective in getting that second claim in front of the state habeas court at the time. So the prejudice could be analyzed looking at all the evidence at the same time with both claims before it. That's why this case is unusual. That's why it's appropriate here to revisit, to look at prejudice in the second claim, considering the fact that the first incriminating statement, the post arrest statement should not have been before that court, regardless of how the court finds on claim one. And the basis for the prejudice under Mateo is that Mateo just said you don't have a presumptive invalid waiver in a Miranda setting. But there are other factors that can impact whether that waiver was valid. And that's why in Mateo, the Supreme Court actually sent the case back down for the defendant to argue that there were other reasons why the police were going around his rights. In that case, the issue was the police may have, there was a factual dispute of whether the police told him whether he had counsel at the time or not. Here, we have an officer that went to elicit an incriminating statement from the defendant at the time Jackson was the law, for two decades. And he had asked for counsel at his bond hearing. And his rights had been violated the day before. There is prejudice here on the second claim. And this court can find that the counsel-attended error on the first claim should not come in as well. We ask that the court reverse and grant in favor of Mr. Ritchie, but at a minimum, reverse, remand, and order an evidentiary hearing on the Martinez prongs of whether he invoked it for counsel at a bond hearing. We believe it did, but that can be adjudicated in an evidentiary hearing below and on the ineffectiveness of state habeas counsel. State habeas counsel clearly missed the claim. There's no basis for missing the claim. Jackson and Mateo right in front of her. She has no Sixth Amendment claim in her application at the state habeas level. If there are no further questions, I'm finished. Thank you very much, Ms. Goldsmith. And we know the court notes that you're court appointed. And we want to thank you for your very able performance in representation of your client this morning. Thank you. I'll ask the court deputy to adjourn court for the day. And we will come down and greet counsel. This honorable court stands adjourned. God save the United States and this honorable court.
judges: Allyson K. Duncan, Albert Diaz, Loretta Copeland Biggs